**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| TOWN OF NEW WINDSOR,<br>*Plaintiff*,<br>v.<br>PSEG RENEWABLE TRANSMISSION LLC, et al.,<br>*Defendants*. | Case No. 26-cv-02277-ABA |

**MEMORANDUM OPINION**

Defendant/Counter Plaintiff PSEG Renewable Transmission LLC ("PSEG") is in the process of applying to the Maryland Public Service Commission ("PSC") for approval to construct a high-voltage transmission line. As part of that process, Maryland's Power Plant Research Program ("PPRP") has required PSEG to conduct certain field-based studies. The proposed route crosses a parcel of land that the Town of New Windsor, Maryland, uses to access public storm water management infrastructure and a public water chlorination tank. New Windsor objects to the surveys being conducted, and has sued PSEG along with PSEG's surveyors—Defendants Stantec Consulting Services Inc., Pennoni Associates Inc., Coastal Resources, Inc., and Ralph Koziarski (collectively, the "Agent Defendants"). PSEG removed the case to this Court and asserted a counterclaim seeking an order confirming its authority to conduct the surveys. New Windsor has moved to remand the case to state court and to dismiss PSEG's counterclaim; Defendants have moved to dismiss the complaint; and PSEG has moved for a preliminary injunction.

The Court has previously issued preliminary injunctions in other nearly identical cases. *See PSEG Renewable Transmission LLC v. Arentz Family, LP*, 788 F. Supp. 3d

705, 711–724 (D. Md. 2025) (hereinafter, "*PSEG I*"); *PSEG Renewable Transmission LLC v. Alvi Properties, LLC, et al.*, Case No. 25-cv-02296-ABA ("*PSEG II*"); *PSEG Renewable Transmission LLC v. Belfast Farms, LLC, et al.*, Case No. 25-cv-03352-ABA ("*PSEG III*"); *PSEG Renewable Transmission LLC v. Richard Smith Snader Testamentary Tr.*, Case No. 26-cv-793-ABA, 2026 WL 2444607 ("*PSEG IV*"). The Fourth Circuit affirmed the decision in *PSEG I*. *PSEG Renewable Transmission LLC v. Arentz Fam., LP*, 185 F.4th 497 (4th Cir. 2026) ("*PSEG Appeal*"). For the reasons that follow, and in keeping with *PSEG Appeal*, the Court will grant the motion for a preliminary injunction (ECF No. 3) and Defendants' motion to dismiss (ECF No. 20). New Windsor's motion to remand (ECF No. 13) and motions to dismiss the counterclaim (ECF No. 21) will be denied.

## I. BACKGROUND[1]

The property at issue in this case is a 30,750 square foot parcel of land located at 1321 New Windsor Road, New Windsor, Maryland 21776 (the "Subject Property"). New Windsor owns the property, and as noted above uses it to access public storm water management infrastructure and a public water chlorination tank. ECF No. 5 ¶ 20.

On October 20, 2025, PSEG sent New Windsor a letter informing it that the Subject Property is along the route for the 67-mile, 500-kilovolt overhead transmission line it proposes to build, known as the Maryland Piedmont Reliability Project ("MPRP"). *Id.* ¶ 16. In the letter, PSEG told New Windsor it would "like to begin discussions . . .

---

[1] As much of the background of this case replicates *PSEG I*, the Court adopts its and the Fourth Circuit's prior explanation of the background. 788 F. Supp. 3d at 711–715; *PSEG Appeal*, 185 F.4th at 502–05. Therefore, this section will only include any background information that pertains specifically to this case.

regarding the process and timing of purchasing an easement," and that PSEG also would be seeking temporary access to the property to "perform studies necessary to verify existing site conditions and to validate public data." *Id.*

On May 26, 2026, PSEG wrote to New Windsor's Town Attorney providing notice of PSEG's intent to conduct land surveys on the property. *Id.* ¶ 23. New Windsor responded the next day, requesting additional information from PSEG regarding the nature of those surveys and who would be conducting them. *Id.* ¶ 24. On May 29, PSEG responded that it would be conducting four surveys: (1) metes and bounds, (2) wetlands delineation, (3) forest stand delineation, and (4) archeological. *Id.* ¶ 25. New Windsor alleges that the Agent Defendants are the entities that would be responsible for conducting those surveys. *Id.* ¶¶ 29–35.

On June 2, 2026, New Windsor filed a complaint in the Circuit Court for Carroll County, Maryland. ECF No. 5. PSEG removed this action to federal court on June 8. ECF No. 1. On June 9, PSEG filed a counterclaim (ECF No. 2) and a motion for preliminary injunction (ECF No. 3). New Windsor filed a response in opposition to that motion (ECF No. 14), and PSEG filed a reply (ECF No. 19). Thereafter New Windsor filed a motion to remand (ECF No. 13), to which Defendants responded (ECF No. 17), and New Windsor replied (ECF No. 28). New Windsor also filed a motion to dismiss PSEG's counterclaim for lack of subject matter jurisdiction and failure to state a claim (ECF No. 21), to which PSEG responded (ECF No. 22), and New Windsor replied (ECF No. 29); and Defendants filed a joint motion to dismiss New Windsor's complaint for failure to state a claim (ECF No. 20), to which New Windsor responded (ECF No. 27), and Defendants replied (ECF No. 30).

## II. DISCUSSION

Although there are four separate motions pending before the Court, they raise many of the same legal arguments. PSEG's motion for preliminary injunction (ECF No. 3) and New Windsor's motions to remand (ECF No. 13) and to dismiss the counterclaim (ECF No. 21) all raise whether this Court has subject matter jurisdiction. PSEG's motions for preliminary injunction (ECF No. 3) and to dismiss (ECF No. 20) and New Windsor's motion to dismiss the counterclaim (ECF No. 21) all address the merits of the parties' arguments regarding whether Section 12-111(a) of the Maryland Code's Real Property Article ("§ 12-111(a)") permits the Defendants to enter the Subject Property. The Court will address these issues in turn, and then resolve any remaining issues pertinent to the individual motions.

### A. Subject Matter Jurisdiction

New Windsor argues that this Court lacks subject matter jurisdiction over the claims in this case pursuant to 28 U.S.C. § 1332(a). ECF No. 13 at 8–16; ECF No. 21-1 at 10–19; ECF No. 14 at 8–9. Under diversity jurisdiction, a district court has jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a), (a)(1). New Windsor argues that this suit meets neither the amount-in-controversy threshold nor the requirement that the case is between citizens of different states. For the following reasons, the Court holds that it has subject matter jurisdiction over this case.

#### *i. Amount in Controversy*

Generally, "the test for determining the amount in controversy in a diversity proceeding is 'the pecuniary result to either party which [a] judgment would produce.'"

*Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir. 2002) (quoting *Gov't Emps. Ins. Co. v. Lally*, 327 F.2d 568, 569 (4th Cir. 1964)). "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 639 (4th Cir. 2010) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977)). Courts "ascertain the value of an injunction for amount in controversy purposes by reference to the larger of two figures: the injunction's worth to the plaintiff or its cost to the defendant." *Id.* (citing *Dixon*, 290 F.3d at 710).

New Windsor argues that "the object of [this] litigation is a court order preventing the Defendants from entering the Town's Property to conduct land surveys" in connection with PSEG's certificate of public convenience and necessity ("CPCN") application, and "PSEG has made no allegations whatsoever about the value of such a court order to the Town or its cost to PSEG." ECF No. 13-1 at 18; *see also* ECF No. 21-1 at 20 (same); ECF No. 14 at 10 (incorporating the arguments made in ECF No. 13).

This Court addressed (and rejected) a similar argument in *PSEG IV*. The dispute there was over whether the expenses PSEG would incur if it were required to prepare a new CPCN application should count towards the amount-in-controversy requirement. The Court held that they would, that PSEG had "sufficiently alleged that its CPCN application is contingent upon the current proposed route for which it is required to complete surveys," and that if PSEG "is unable to complete the required surveys on any of the properties along the current proposed route, it would need to redesign the proposed route and submit a new CPCN application, thus re-incurring expenses far in excess of the $75,000 threshold for diversity jurisdiction." Case No. 26-cv-793-ABA, 2026 WL 2444607, at *4. PSEG has made similar allegations here: that if it is "forced to

abandon the MPRP because its CPCN application cannot proceed, it will lose the opportunity for significant revenue," including "approximately $17 million annually—well above the $75,000 required for jurisdiction in this Court." ECF No. 17 at 13–14. Those allegations are supported by evidence in the form of the declaration of Dawn Shilkoski, a Senior Project Manager at PSEG, which details the over $10 million in fees PSEG would incur to prepare a new CPCN application, as well as the revenue PSEG would lose if the project were never completed. ECF No. 2-2 ¶¶ 29–30. For the reasons articulated in *PSEG IV*, the Court holds that the amount in controversy requirement in 28 U.S.C. § 1332(a) is satisfied here.

#### *ii. Complete Diversity*

Under 28 U.S.C. § 1332(a), "diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." *Skidmore v. Schinke*, 171 F.4th 319, 323 (4th Cir. 2026) (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978)).

New Windsor argues that diversity is lacking here because it is a citizen of Maryland, as are at least three of the Agent Defendants. *See* ECF No. 13-1 at 11. PSEG, a Delaware corporation with its headquarters in New Jersey, does not dispute that some of the Agent Defendants are Maryland citizens, but rather argues that they should be disregarded for diversity purposes as they are "nominal parties." ECF No. 17 at 5. This issue has not arisen in any of this Court's other *PSEG* cases or before the Fourth Circuit in the appeal of *PSEG I*; this is the first case where landowner parties have named as parties the surveyors hired by PSEG to conduct the surveys at issue.

When determining whether there is complete diversity, "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of

real parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980); *see also* 3 Wright & Miller's Federal Practice & Procedure § 3606 (3d ed. 1998) ("[I]t has long been established by innumerable precedents from all quadrants of the federal judicial system that the citizenship of nominal or formal parties who have no interest in the action will be ignored; if the real controversy is between citizens of different states, the court has subject matter jurisdiction."). "Determining nominal party status is a practical inquiry, focused on the particular facts and circumstances of a case," which is a "straightforward inquiry" of "whether the non-removing party has an interest in the outcome of the case." *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 260–61 (4th Cir. 2013).[2] This inquiry should not "venture into hypotheticals." *Id.* at 261; *see also Ledwell v. Ravenel*, 843 F. App'x 506, 507 (4th Cir. 2021) (holding that the party advocating against nominal party status must "establish a nonspeculative basis for concluding that [a party] has a palpable interest in this case").

First, New Windsor argues that the Agent Defendants are not nominal parties because "[t]he statute on which PSEG relies for its claimed right of entry extends the right to surveyors, and indeed has been called 'the surveyors statute.'" ECF No. 13 at 12;

---

[2] *Hartford* involved the nominal party exception to the rule of unanimity governing removal. 736 F.3d at 258. The Fourth Circuit has since cited *Hartford* in holding that a party was a nominal party for the purposes of diversity jurisdiction. *Madison Mech., Inc. v. Twin City Fire Ins. Co.*, Case No. 19-2406, 2022 WL 17269022, at *2 n.3 (4th Cir. Nov. 29, 2022). Other courts in this district have applied *Hartford* and its progeny to determine when a party is a nominal party in the diversity context. *See, e.g.*, *Quintana v. J.P. Morgan Chase Bank, N.A.*, Case No. 14-cv-1586-DKC, 2015 WL 1321436, at *3–4 (D. Md. Mar. 23, 2015) (applying *Hartford* in a diversity jurisdiction challenge); *Oak Plaza, LLC v. Buckingham*, Case No. 22-cv-0231-DKC, 2022 WL 1591404, at *5 (D. Md. May 19, 2022) (same); *Talley v. Ocwen Loan Servicing, LLC*, Case No. 18-cv-0052-TJS, 2018 WL 2717849, at *3 (D. Md. June 6, 2018) (same). Accordingly, the Court will analyze the nominal party issue here under the *Hartford* framework.

ECF No. 21 at 15. In other words, New Windsor argues that because § 12-111(a) grants the right of entry to surveyors, not PSEG, the Agent Defendants maintain an interest in this litigation.

Section 12-111(a) permits "[c]ivil engineers, land surveyors, real estate appraisers, and their assistants" to "[e]nter on any private land" and perform appraisals and surveys when "*acting on behalf of* the State or . . . any body politic or corporate having the power of eminent domain." Md. Code Ann., Real Prop. ("RP"), § 12-111(a)(1) (emphasis added). Although the statute grants the right to enter to individual surveyors, they may only do so when acting as an agent of the entity with the power of eminent domain. The Agent Defendants here have no independent right to enter the Subject Property. Their rights, if any, are fully derivative of those PSEG may possess. Indeed, New Windsor's arguments for why § 12-111(a) does not apply all focus on whether PSEG has the power of eminent domain. ECF No. 5 ¶¶ 40–46. An injunction against PSEG would necessarily also prevent the Agent Defendants from entering onto the Subject Property. The Agent Defendants, therefore, have no real interest in the outcome of this case. *See Lyles v. FTL Ltd., Inc.*, Case No. 2:17-cv-01974, 2018 WL 762467, at *4 (S.D.W. Va. Feb. 7, 2018) (holding that a defendant was not a "a real party in interest" just because a declaratory judgment would apply to all defendants, because the suit could "be wholly resolved through immediate consequences to Plaintiff and [another defendant] only").

New Windsor's argument that a "failure to obtain relief against the non-PSEG Defendants would leave the Town vulnerable to a future unlawful entry without further litigation, for example at the direction of a different transmission development company if PSEG's CPCN were to be denied," ECF No. 13-1 at 16, is purely speculative. There are no allegations that any other company has applied for a CPCN that would apply to the

Subject Property, or that the Agent Defendants have a right to enter on behalf of any entity other than PSEG. To accept New Windsor's argument, the Court would have to "venture into hypotheticals," which play no part in the nominal party inquiry. *Hartford,* 736 F.3d at 261.

Second, New Windsor argues that the Agent Defendants nonetheless maintain an interest in this suit because they "have a financial interest in the outcome of this litigation, given that they have been hired by PSEG to perform the land surveys." ECF No. 28 at 3–4. This argument is also speculative. The record reflects nothing regarding the nature of the contracts between PSEG and the Agent Defendants. It is not clear, for example, whether they are paid on a fixed fee or per-survey basis. In other words, it is not evident that the Agent Defendants will not be paid if the Court were to find in favor of New Windsor. Accordingly, the Court holds that the Agent Defendants are nominal parties for the purposes of complete diversity; New Windsor having named them as defendants does not deprive the Court of subject matter jurisdiction under 28 U.S.C. § 1332.

## B. Section 12-111(a)

New Windsor's claims and PSEG's counterclaims focus on whether § 12-111(a) permits PSEG and its agents to enter the Subject Property to perform surveys as part of its CPCN application. Resolving this issue requires the Court to interpret § 12-111(a). As the Fourth Circuit instructed in *PSEG Appeal*, "[f]oundational principles of statutory interpretation under Maryland law direct courts to presume that the Maryland General Assembly intends for its enactments to operate together as a consistent and harmonious body of law." 185 F.4th at 502. And federal courts, "when construing Maryland statutes, must avoid an interpretation that renders a statutory scheme unworkable." *Id.*

As discussed above, § 12-111(a) grants "[c]ivil engineers, land surveyors, real estate appraisers, and their assistants" the right to enter onto "private land" and perform appraisals and surveys when "acting on behalf of the State or . . . any body politic or corporate having the power of eminent domain." RP § 12-111(a)(1). New Windsor argues that § 12-111(a) is inapplicable here.

First, New Windsor argues that PSEG is not "acting on behalf of the State or of any of its instrumentalities" or a "body politic or corporate having the power of eminent domain." *Id.* at 12–20. It argues that, without a CPCN, PSEG currently lacks the power to condemn, and therefore does not have the power of eminent domain. *Id.* at 19–20. It also argues that PSEG is not acting on behalf of the State because the surveys here are "for PSEG's own benefit—so that it may receive approval to construct a transmission line for profit—not the benefit of the State of Maryland or any of its instrumentalities." *Id.* at 22. The Fourth Circuit resolved this issue in *PSEG Appeal* when it held that "requiring PSEG to obtain a CPCN before accessing property under Section 12-111(a) would render the statutory scheme unworkable, 'illogical, unreasonable, [and] inconsistent with common sense.'" 185 F.4th at 510 (quoting *Lawrence v. State*, 475 Md. 384, 406–07) (2021)). The court therefore held that PSEG likely gained the power of eminent domain "for purposes of Section 12-111(a) when PPRP directed it to complete the necessary field studies," and because "PPRP acts on behalf of Maryland state agencies" PSEG is effectively working "at the direction of state agencies" in conducting the surveys. *Id.* at 511.

Second, New Windsor argues that § 12-111(a) only authorizes surveys on "private land," and therefore does not grant entry to any public land such as the Subject Property. ECF No. 14 at 12–14. It also argues that "no statute exists whereby the

[Maryland] General Assembly has delegated to PSEG, either expressly or by necessary implication, the authority to condemn public property for the purposes of conducting surveys and/or to build transmission lines." *Id.* at 18.

The State of Maryland has inherent authority to condemn property in the exercise of eminent domain to "convert it to public use." *A & E N., LLC v. Mayor & City Council of Baltimore*, 431 Md. 253, 260 (2013) (citation omitted). For state agencies to exercise that authority, condemnation authority must have been conferred "directly, or by necessary implication, . . . upon them by the State Legislature." *Id.* (quoting Baker & Altfeld, *Maryland's New Condemnation Code,* 23 MD. L. REV. 309, 311 (1963)). In response to New Windsor's claim that State agencies and PSEG have no authority to exercise eminent domain to build transmission lines over land owned by a local government, PSEG argues that "the power to exercise eminent domain authority over public land is necessarily implied from" Md. Code Ann., Pub. Util. ("PU") § 7-207 ("§ 7-207"). ECF No. 19 at 8. It points to two parts of § 7-207: Section 7-207(b)(3)(iii)(2) authorizes the PSC to grant a certificate of public need to an applicant that "is or, on the start of commercial operation of the overhead transmission line, will be[,] subject to regulation as a public utility by an officer or an agency of the United States"—and as PSEG notes, it is a federally regulated public utility. And § 7-207(b)(3)(v)(2) expressly permits a "public utility" to exercise condemnation authority to construct transmission lines for which it receives a CPCN. ECF No. 3-1 at 21 & ECF No. 19 at 10. Thus, PSEG argues, "by necessary implication," § 7-207 "permits the Company to condemn public and private land along the path of the PSC approved route." ECF No. 19 at 10.

New Windsor, for its part, argues that § 7-207 does not apply to land owned by a local government. It points to § 7-207(b)(3)(v)(2), which grants property or rights "in

accordance with Title 12." In New Windsor's view, this means § 7-207 only applies to private property because RP § 12-101 is "limited to the 'acquisition of private property for public use,'" ECF No. 14 at 15 (quoting RP § 12-101(a)), and because "Maryland's condemnation statutes are strictly construed," *id.* (citing *Davis v. Bd. of Educ.*, 166 Md. 118, 120 (1934)). New Windsor also argues that, to the extent there is a conflict between § 12-111(a) and § 7-207, § 12-111(a)—which refers to entry onto "private" land to make surveys, etc.—should govern as the "more specific statute." ECF No. 27 at 20.

As the Fourth Circuit held in *PSEG Appeal*, when interpreting statutes, particularly Maryland statutes, courts must "view the plain language 'within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute.'" 185 F.4th at 509 (quoting *Lockshin v. Semsker*, 412 Md. 257, 276 (2010)). Courts must avoid interpretations that would be "illogical, unreasonable, [and] inconsistent with common sense." *Id.* at 510 (quoting *Lawrence v. State*, 475 Md. 384, 406–07) (2021)). New Windsor's argument that Title 12 applies only to public property would be one such interpretation. Section 12-101(a) states that "[a]ll proceedings for the acquisition of *private property* for public use by condemnation are governed by the provisions of this title." RP § 12-101(a) (emphasis added). Although it only mentions private property, it does not explicitly state that Title 12 does not apply to public property. In fact, § 12-104, the provision that governs damage awards, appears to contemplate that Title 12 does apply to public property, as it specifies the damages "to be awarded for the taking of all land owned and designated by a public body as park land, open space, or recreation area." *Id.* § 12-104(e)(1). It would be illogical, therefore, to hold that Title 12 in its entirety does not apply to public property. For similar reasons, then, the reference to Title 12 in § 7-207(b)(3)(v)(2) does

not preclude § 7-207 from applying to public property such as the Subject Property. To the contrary, § 7-207 confers condemnation authority over public property "by necessary implication." *See A & E N., LLC*, 431 Md. at 260. Section 7-207 grants the PSC, a State entity, the right to issue CPCNs for overhead transmission lines. PU § 7-207(b)(3)(iii). New Windsor has not shown that that grant of authority could be thwarted because the proposed line happens to pass through or over property belonging to a local government. Indeed, as the Supreme Court of Maryland explained in holding that state law preempts local governments from regulating the construction of transmission lines, the legislature has delegated authority over the construction of transmission lines to the PSC, and it "could not possibly have intended" to allow local governments to "impose special conditions" that could "effectively thwart [a transmission line's] construction even after the utility had been granted a certificate by the PSC." *Howard Cnty. v. Potomac Elec. Power Co.*, 319 Md. 511, 527 (1990). The same reasoning applies to § 7-207 and § 12-111(a), and to the steps necessary to obtain approval from the PSC.

Accordingly, § 12-111(a) permits PSEG and its agents to enter the Subject Property for the purposes of conducting the required surveys. Although the right to entry in § 12-111(a) only mentions "private property," RP § 12-111(a)(1), (3), as the Fourth Circuit explained in *PSEG Appeal*, the "General Assembly intended for applicants to become a federal public utility to have a path to obtain a CPCN." 185 F.4th at 511. Because PSEG must conduct these surveys in order to complete its CPCN application, if it "could not access [the Subject Property] . . . it would have no viable path" to obtaining a CPCN. *Id.*

### C. The Parties' Motions

#### *i. PSEG's Motion for Preliminary Injunction (ECF No. 3)*

A preliminary injunction is a form of equitable relief intended to prevent irreparable harm while a lawsuit remains pending. *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014). To obtain a preliminary injunction, a plaintiff must establish that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tip in his favor; and (4) an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *League of Women Voters of N.C.*, 769 F.3d at 236; *Am. Fed'n of Tchrs. v. Bessent*, 152 F.4th 162, 168–69 (4th Cir. 2025). The third and fourth factors merge when, as here, the government is the opposing party. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

As discussed above, PSEG has demonstrated that it will likely succeed on the merits because § 12-111(a) likely grants PSEG and its agents authority to enter the Subject Property to conduct surveys. *See* § II.B, *supra*. Likewise, contrary to New Windsor's argument, this Court has subject matter jurisdiction. *See* § II.A, *supra*.

New Windsor's remaining arguments are that the Court should "preserve the status quo by denying the preliminary injunction," ECF No. 14 at 11; that PSEG has not shown it will suffer irreparable harm because it has not demonstrated a present threat of harm, *id.* at 22–27; and that the balance of the equities and public interest do not support PSEG's requested relief, *id.* at 27–30. In *PSEG Appeal*, the Fourth Circuit addressed, and rejected, similar arguments. 185 F.4th at 508, 512–16. For similar reasons, the Court holds that PSEG has established the necessary elements to favor granting a preliminary injunction.

### *ii. New Windsor's Motion to Remand (ECF No. 13)*

Under 28 U.S.C. § 1441(a), a defendant may remove a state court case that could have originally been brought in federal court. Federal courts are "constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." *In re Bulldog Trucking, Inc.* 147 F.3d 347, 352 (4th Cir. 1998). Accordingly, federal courts have original jurisdiction over civil cases, with some exceptions, in two primary instances: (1) under federal question jurisdiction, where the case involves an issue of federal law, *see* 28 U.S.C. § 1331, or (2) under diversity jurisdiction where no defendant may be a citizen of the same state as any plaintiff and the amount in controversy exceeds $75,000, *see* 28 U.S.C. § 1332. For the reasons articulated above, *see* § II.A, *supra*, this Court has subject matter jurisdiction based on diversity of citizenship of the real parties in interest to this dispute. Therefore, New Windsor's motion to remand will be denied.

### *iii. PSEG's Motion to Dismiss (ECF No. 20)*

PSEG moves to dismiss New Windsor's complaint (ECF No. 5) under both Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. ECF No. 20-1 at 7. The parties disagree on what standard should apply to resolve this motion. New Windsor argues that the Court should not reach the merits in resolving the motion, but rather should be limited to the standard articulated in *White v. National Union Fire Insurance Company*, 913 F.2d 165, 167 (4th Cir. 1990). ECF No. 27 at 11–12. PSEG argues that the *White* standard is only applicable to the question of jurisdiction, and that the Court should apply the normal Rule 12(b)(6) standard to resolve that part of the motion. ECF No. 30 at 2–3.

In *White,* the Fourth Circuit held that "for a district court to have jurisdiction to issue a declaratory judgment, two conditions must be satisfied. First, the dispute must be a 'case or controversy' within the confines of Article III of the United States Constitution—the 'constitutional' inquiry. Second, the trial court, in its discretion, must be satisfied that declaratory relief is appropriate—the 'prudential' inquiry." 913 F.2d at 167. The Fourth Circuit has not addressed which standard applies to a Rule 12(b)(6) motion, but other courts in this district have "consistently applie[d] the Rule 12(b)(6) standard of review to declaratory actions." *Kelly v. OCWEN Loan Servicing LLC*, Case No. 17-cv-39-GLR, 2017 WL 4478250, at *2 (D. Md. June 20, 2017) (gathering cases), *aff'd*, 710 F. App'x 129 (4th Cir. 2018).

A complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant asserts that, even assuming the truth of the alleged facts, the complaint fails "to state a claim upon which relief can be granted," the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). At the pleadings stage, the Court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016) (citation omitted).

To withstand a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level" by containing "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court reviewing a 12(b)(6) motion must "accept as true all of the factual

allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff," *King*, 825 F.3d at 212, bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal*, 556 U.S. at 679.

For the reasons articulated above, New Windsor is not entitled to the declaratory relief it seeks as a matter of law. *See* § II.B, *supra*. Accordingly, the Court will dismiss New Windsor's complaint (ECF No. 5) pursuant to Rule 12(b)(6). The Court, therefore, need not reach the question of whether it has jurisdiction pursuant to the test laid out in *White*.[3]

### ***iv. New Windsor's Motion to Dismiss (ECF No. 21)***

New Windsor moves to dismiss PSEG's counterclaim (ECF No. 2) under both Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. ECF No. 21 at 1.

A motion to dismiss based on lack of subject matter jurisdiction raises questions regarding the Court's authority to adjudicate a case, and so the Court must generally first determine whether it has jurisdiction over the claims before ruling on the merits. Fed. R. Civ. P. 12(b)(1); *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–102 (1998)); *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). "[I]f the [defendant] challenges jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of persuasion, and the court is free to consider exhibits outside the pleadings 'to resolve factual disputes concerning jurisdiction.'" *Smith v. Wash. Metro. Area Transit Auth.*,

---

[3] For similar reasons, the Court does not reach the question of whether New Windsor has standing to sue the Agent Defendants. *See* ECF No. 20-1 at 10–16.

290 F.3d 201, 205 (4th Cir. 2002) (quoting *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995)).

For the reasons articulated above, this Court has subject matter jurisdiction. *See* § II.A, *supra*. New Windsor's argument to dismiss PSEG's counterclaim incorporates its opposition to PSEG's motion for a preliminary injunction. ECF No. 21-1 at 21. For the same reasons that the Court will grant the preliminary injunction, § II.C.i, *supra*, the Court will deny New Windsor's motion to dismiss the counterclaim.

## III. CONCLUSION

For the aforementioned reasons, New Windsor's motion to remand and motion to dismiss the counterclaim will be denied, and PSEG's motion for preliminary injunction and Defendants' motion to dismiss will be granted. A separate order and Preliminary Injunction follow.

Dated: October 29, 2026

/s/
Adam B. Abelson
United States District Judge